**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

DAYANA AGUIAR, individually and on behalf of all others similarly situated,

       Plaintiff,

v.

M.J. PETER & ASSOCIATES, INC., a Florida Corporation; M.J. PETER CLUB MANAGEMENT, INC., a Florida Corporation; MRG OF SOUTH FLORIDA, INC. dba SOLID GOLD GENTLEMEN'S CLUB, a Florida Corporation; BEE LINE ENTERTAINMENT PARTNERS, LLC dba SOLID GOLD GENTLEMEN'S CLUB, a Florida Limited Liability Company; 1350 FOOD & BEVERAGE LLC dba SOLID GOLD GENTLEMEN'S CLUB, a Florida Limited Liability Company; MICHAEL J. PETER, an individual; and DOES 1 through 10, inclusive,

       Defendants.

_____ /

**Case No.: 0:20-cv-60198-AMC**

**<u>COLLECTIVE ACTION</u>**

Assigned to Hon. Aileen M. Cannon

**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT**

Complaint Filed: January 29, 2020

**TO THIS HONORABLE COURT AND ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that plaintiffs Dayana Aguiar, Victoria Adams, Chrystal Fung, Malaika Guthrie, Milena Hernandez, Chantise Jackson, Myrvline Jerome, Nicole Monteiro, Marliz Nevarez, Ashley Osborne, LaShanna Sexton, Sydney Smith, Joey Soto, Natalie Stevenson, and Carina Vottero (collectively, "Plaintiffs") will, and hereby do, move and request approval from this Court of the settlement reached between Plaintiffs and defendants M.J. Peter & Associates, Inc., M.J. Peter Club Management, Inc., MRG of South Florida, Inc. dba Solid Gold Gentlemen's Club, Bee Line Entertainment Partners, LLC dba Solid Gold Gentlemen's Club, 1350 Food & Beverage LLC dba Solid Gold Gentlemen's Club, and Michael J. Peter (collectively, "Defendants") after mediation with Dominic Brandy on June 17, 2021.

The Settlement Agreements are attached to the Declaration of Jesenia A. Martinez and are filed concurrently with Joint Motion. *See* Declaration of Jesenia A. Martinez ("Martinez Decl.") ¶ 2, Exhibits ("Exs.") 1-15.

This Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, the declarations and exhibits thereto, the pleadings, and all other papers on file in this action, and upon such other evidence and arguments as may be presented at the hearing on this matter.

Dated: July 12, 2021

/s/ Jesenia A. Martinez
Jesenia A. Martinez
California Bar No. 316969
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax:  (310) 507-7906
*jesenia@kristensenlaw.com*
(*Pro Hac Vice*)

Raymond R. Dieppa
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
12550 Biscayne Boulevard, Suite 405
North Miami, Florida 33181
Telephone: (305) 722-6977

*ray.dieppa@floridalegal.law*

Jarrett L. Ellzey
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone:  (713) 554-2377
*jarett@ellzeylaw.com*
(*Pro Hac Vice* forthcoming)

***Attorneys for Plaintiffs***

## <u>CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 7.1 (a)(3)</u>

Plaintiffs' counsel certifies that prior to the filing of the instant motion, all parties, through counsel, met and conferred pertaining to the subject matter of the instant motion. Defendants do not oppose this Motion.

Dated: July 12, 2021

/s/ Jesenia A. Martinez
Jesenia A. Martinez
California Bar No. 316969
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax:  (310) 507-7906
*jesenia@kristensenlaw.com*
(*Pro Hac Vice*)

Raymond R. Dieppa
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
12550 Biscayne Boulevard, Suite 405
North Miami, Florida 33181
Telephone: (305) 722-6977
*ray.dieppa@floridalegal.law*

Jarrett L. Ellzey
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone:  (713) 554-2377
*jarett@ellzeylaw.com*
(*Pro Hac Vice* forthcoming)

***Attorneys for Plaintiffs***

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiffs Dayana Aguiar ('Aguiar'), Victoria Adams ('Adams"), Chrystal Fung ("Fung"), Malaika Guthrie ("Guthrie"), Milena Hernandez ("Hernandez"), Chantise Jackson ("Jackson"), Myrvline Jerome ("Jerome"), Nicole Monteiro ("Monteiro"), Marliz Nevarez ("Nevarez"), Ashley Osborne ("Osborne"), LaShanna Sexton ("Sexton"), Sydney Smith ("Smith"), Joey Soto ("Soto"), Natalie Stevenson ("Stevenson"), and Carina Vottero ("Vottero") (collectively, "Plaintiffs") worked as exotic dancers at Solid Gold Gentlemen's Club in Pompano Beach, Florida. The club is owned and operated by defendants MRG of South Florida, Inc. dba Solid Gold Gentlemen's Club, Bee Line Entertainment Partners, LLC dba Solid Gold Gentlemen's Club, 1350 Food & Beverage, LLC dba Solid Gold Gentlemen's Club, Michael J. Peter, M.J. Peter & Associates, Inc., and M.J. Peter Club Management, Inc, and Does 1 through 10, inclusive, (collectively, "Defendants").

Aguiar filed this matter alleging that Defendants failed to pay her any wages and asserted claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). Aguiar successfully achieved conditional certification of this matter as a collective action and Adams, Fung, Guthrie, Hernandez, Jackson, Jerome, Monteiro, Nevarez, Osborne, Sexton, Smith, Soto, Stevenson, and Vottero joined as opt-in plaintiffs. *See* Dkts. 77-79, 84-91, 93-96, 98.

On June 17, 2021, the parties held a mediation with Dominic Brandy, which resulted in the settlement of the entire matter as further explained below. *See* Dkt.111.

### II.   NATURE OF CLAIMS AND PROCEDURAL HISTORY

Plaintiff was employed by Defendants in the past three years. Plaintiff worked at Solid Gold from approximately the time the club opened in Pompano Beach to 2019. *See* Dkt. 55-1 at ¶ 4. Plaintiff worked at Defendants' principal place of business located at 1350 SW 2nd Street, Pompano Beach, Florida, 33069. Solid Gold is the trade name of Defendants. It is owned and or managed by Michael J. Peter and other named defendant entities. *See* Dkt. 1.

Plaintiff's cause of action arises from Defendants' willful actions while employed by Defendants, including Plaintiff being denied minimum wage payments and denied overtime as part of Defendants' scheme to classify Plaintiff and other dancers/entertainers as "independent contractors." Additionally, Defendants illegally absconded with Plaintiff's tips. Plaintiff's Complaint for Damages includes causes of action: (1) Failure to Pay Minimum Wages, 29 U.S.C. § 206; (2) Failure to Pay Overtime Wages, 29 U.S.C. § 207; and (3) Unlawful Taking of Tips, 29 U.S.C. § 203. *See* Dkt. 55-1 at ¶¶ 2-9.

On August 7, 2020, Plaintiff filed her Motion for Conditional Certification of Collective Action and Issuance of Notice Pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) [Dkt. 55], which was granted on September 10, 2021. *See* Dkt. 64.

On August 24, 2020, the Parties attended a mediation with Dominic Brandy, which was not successful. *See* Dkts. 62-63.

On October 2, 2021, the Parties attended a settlement conference with Magistrate Jared M. Strauss. No resolution was achieved. *See* Dkts. 69-70.

The case proceeded through discovery and, by the end of the notice period, fourteen (14) collective members opted in and joined Ms. Aguiar in seeking resolution of their FLSA claims against Defendants. Near the end of discovery, Plaintiffs would have moved for partial summary judgment on the following issues: (1) Plaintiffs were employees, not independent contractors, as a matter of law; (2) Defendants' affirmative good faith defense fails as a matter of law; and (3) Defendant Michael J. Peter's individual liability as Plaintiffs' employer.

On June 17, 2021, the Parties mediated with Mr. Brandy for the second time. After hours of negotiations, a settlement in principle was reached. *See* Dkt. 111. The Parties have executed Settlement Agreements, for which they now seek approval.

## III.   THE SETTLEMENT AGREEMENTS

Under the Settlement Agreements, Defendants have agreed to pay Plaintiffs a gross settlement of $295,000. Payment is due by August 2, 2021, or ten (10) days after Court approval, whichever is later. If payment is not made, the Settlement Agreements contain stipulated

judgments, enabling Plaintiffs to promptly enforce judgments for the amounts owed. *See* Declaration of Jesenia A. Martinez ("Martinez Decl.") ¶ 2, Exhibits ("Exs.") 1-15. The allocations to the individual Plaintiffs are as follows:

| PLAINTIFF | GROSS SETTLEMENT AMOUNT |
|---|---:|
| Victoria Adams | $7,000 |
| Dayana Aguiar | $95,000 |
| Chrystal Fung | $15,000 |
| Malaika Guthrie | $3,000 |
| Milena Hernandez | $10,000 |
| Chantise Jackson | $5,000 |
| Myrvline Jerome | $5,000 |
| Nicole Monteiro | $10,000 |
| Marliz Nevarez | $30,000 |
| Ashley Osborne | $7,000 |
| LaShanna Sexton | $3,000 |
| Sydney Smith | $15,000 |
| Joey Soto | $35,000 |
| Natalie Stevenson | $20,000 |
| Carina Vottero | $35,000 |
| **TOTAL** | **$295,000.00** |

*See id.*

Adams worked at Solid Gold from approximately November 2019 to February 2020. During this period, she would work two shifts per week, or approximately eight days a month over this three-month time period, which is around 24 shifts in total. Adams would be owed $2,784 in minimum wage plus liquidated damages. Adams would tip the DJ around $10 to $15 per shift. *See id.* at ¶ 3.

Aguiar worked at Solid Gold since the club opened to 2020. During this period, she would work 32 hours per week, or approximately four to five days a month over this time period, which is around 795 shifts in total. Aguiar would be owed $22,620 in minimum wage plus liquidated damages. Aguiar would pay house fees of around $80 and would tip around $55 at the end of every shift. Aguiar was attended both mediations and the settlement conference, provided a declaration for the Motion for Conditional Certification and Issuance of Notice, and worked closely with Plaintiffs' counsel as the case progressed. Had this matter gone to trial, she would have been a key witness for Plaintiffs' case and would have been deposed. *See id.* at 4.

Fung worked at Solid Gold from approximately August 2019 to March 2020. During this period, she would work three to four shifts per week, or approximately 16 days a month over this seven-month time period, which is around 112 shifts in total. Fung would be owed $12,992 in minimum wage plus liquidated damages. She would pay house fees of around $40 to $100, depending on the time she arrived and would tip around $40 per shift. *See id.* at 5.

Guthrie worked at Solid Gold from approximately April 2018 to May 2018. During this period, she worked four shifts total. She would be owed $464 in minimum wage plus liquidated damages. She would tip around $40 per shift, and the club took $15 from all dance fees she earned. *See id.* at 6.

Hernandez worked at Solid Gold from approximately November 2018 to March 2019. During this period, she would work three to five shifts per week, or approximately 20 days a month over this seven-month time period, which is around 80 shifts in total. She would be owed $9,280 in minimum wage plus liquidated damages. She would pay house fees of around $50, and would tip around $55 per shift. The club kept $5 from all dance fees she earned. *See id.* at 7.

Jackson worked at Solid Gold in May 2019. During this period, she worked approximately six shifts total. She would be owed $696 in minimum wage plus liquidated damages. She would pay house fees of around $30, and would tip around $15 per shift. The club kept $5 from all dance fees she earned. *See id.* at 8.

///

Jerome worked at Solid Gold from approximately January 2020 to March 2020. During this period, she would work three shifts per week, which is around 24 shifts in total. She would be owed $2,784 in minimum wage plus liquidated damages. She would pay house fees of around $100, and would tip around 10% of what earned from dances per shift. *See id.* at 9.

Monteiro worked at Solid Gold from approximately 2018 to February 2020, but the club's records reflect she worked from May 2019 to December 2019. During this period, she a little less than 30 shifts in total. She would be owed $3,480 in minimum wage plus liquidated damages. She would pay house fees of around $80, and would tip around $70 of what she earned from dances per shift. *See id.* at 10.

Nevarez worked at Solid Gold from approximately June 2017 to December 2019, her claim is limited to December 2017 to December 2019 because of the statute of limitations based on the date she joined, assuming Plaintiffs would have prevailed on a finding of willfulness. During this period, she worked two to three shifts per week. She would be owed $24,128 in minimum wage plus liquidated damages. She would pay house fees of around $100-$150, and would tip around $50 of what she earned from dances per shift. *See id.* at 11.

Osborne worked at Solid Gold from approximately January 2018 to August 2019. During this period, she worked a total of eight to ten shifts. She would be owed $1,160 in minimum wage plus liquidated damages. She would pay house fees of around $40-$100, and would tip around $50 of what she earned from dances per shift. *See id.* at 12.

Sexton worked at Solid Gold from approximately March 2019 to February 2020. During this period, she worked four shifts total. She would be owed $464 in minimum wage plus liquidated damages. She would pay house fees of around $50-$100, would tip around $50 of what she earned from dances per shift, and the club took $5 from all dance fees she earned. *See id.* at 13.

Smith worked at Solid Gold from approximately August 2017 to August 2019, though her claim is limited to January 2018 to August 2019 based on the statute of limitations from when she joined this matter. During this period, she worked off and on around one to four shifts per week. She would pay house fees of around $80, would tip around $40 of what she earned from dances

per shift, and the club took a portion from all dance fees she earned. She would be owed $8,816 in minimum wage plus liquidated damages. The club did not have any records regarding her shifts. *See id.* at 14.

Soto worked at Solid Gold from approximately February 2017 to November 2019, though her claim is limited to February 2018 to November 2019 based on the statute of limitations from when she joined this matter. During this period, she worked three to four shifts per week. She would be owed $29,232 in minimum wage plus liquidated damages. She would pay house fees, would tip around $40 of what she earned from dances per shift, and the club took a portion from all dance fees she earned. *See id.* at 15.

Stevenson worked at Solid Gold from approximately February 2019 to March 2020. During this period, she worked two to four shifts per week. She would be owed $12,064 in minimum wage plus liquidated damages. She would pay house fees of around $20, would tip around $20 of what she earned from dances per shift, and the club took a portion from all dance fees she earned. *See id.* at 16.

Vottero worked at Solid Gold from approximately June 2018 to March 2020. During this period, she worked three to four shifts per week. She would be owed $464 in minimum wage plus liquidated damages. She would be owed $29,232 in minimum wage plus liquidated damages. She would pay house fees, would tip around $60 of what she earned from dances per shift, and the club took $10 from all dance fees she earned. *See id.* at 17.

Defendants' records had different amounts of shifts for each dancer. That played a role in weighing the value of each claim as some Plaintiffs did not have records of the time they claimed to have worked for Defendants and would have relied on their own testimony to rebut Defendants' records. *See id.* at ¶ 18.

Plaintiffs' counsel has significant experience in litigating employment cases. The settlement amounts and terms resulted in significant resolutions for the Plaintiffs. *See* Martinez Decl. ¶¶ 2-48.

Plaintiffs' counsel incurred $5,647.83 in costs that are being allocated evenly in an amount of $376.52 to all Plaintiffs. Plaintiffs' counsel has a lodestar of over $170,000, and pursuant to the retainer agreements and the release signed by the Plaintiffs, are entitled to 45% of the settlement, which is $132,750. The lodestar is greater than the amount Plaintiffs' counsel is seeking in attorneys' fees. *See* Martinez Decl. ¶ 49, Exs. 16-20.

Plaintiffs' counsel litigated these cases extensively. The settlement amounts are significant amounts and take into account: the amount of time litigated; having to litigate a number of claims; the ability to reach resolution and collect, which is relevant in this current unknown economic environment. *See* Declaration of Michael J. Peter ("Peter Decl.") 1-15. In exchange for the consideration described above, Plaintiffs have agreed to dismiss their causes of action for alleged violations of the FLSA and any state wage and hour claims stemming from Plaintiffs' employment with the Defendants at issue in the Complaint. *See* Martinez Decl. ¶ 2, Exs. 1-15.

## IV.   LEGAL STANDARD

"When employees bring a private action for back wages under the [FLSA], and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).

Under *Lynn's Food Stores*, a district court may approve an FLSA settlement only if it reflects "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524, 2015 WL 6091741, at *4 (N.D. Cal. Oct. 16, 2015) (quoting *Lynn's Food Stores*, 679 F.2d at 1355). "If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation." *Lynn's Food Stores*, 679 F.2d at 1354.

The FLSA was enacted for the purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine v. Arkansas–Best Freight System*, 450 U.S. 728, 739 (1981). Therefore, an employee's right to fair payment cannot be "abridged by contract or otherwise

waived because this would nullify the purposes of the statute and thwart the legislative policies it was designed to effectuate." *Id.* Accordingly, FLSA settlements require the supervision of the Secretary of Labor or the district court. *See Lynn's Food Stores*, 679 F.2d at 1352-53. The FLSA also requires that a settlement agreement include an award of reasonable fees. *See* 29 U.S.C. § 216(b) ("The court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action").

The Eleventh Circuit, following *Lynn's Food Stores*, in determining whether a settlement is fair and reasonable identified the factors such as: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, risk, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the strength of the plaintiff's case and the probability of plaintiff's success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel. *See King v. My Online Neighborhood*, No. 6:06-cv-435-ORL-22JGG, 2007 WL 737575 (M.D. Fla. March 7, 2007) (citing *Leverso v. South Trust Bank of Ala., Nat'l. Ass'n.*, 18 F.3d 1527, 1531 n.6 (11th Cir. 1994)).

When considering these factors, the Court should keep in mind the "'strong presumption' in favor of finding a settlement fair." *King*, 2007 WL 737575, at *3 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Moreover, "a settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.* (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (other internal citations omitted)).

As discussed below, these factors strongly weigh favor of approving this settlement.

## V.   THE SETTLEMENT IS A REASONABLE COMPROMISE OF A BONA FIDE DISPUTE

The Court should approve the settlement because it reflects a reasonable compromise of a *bona fide* dispute regarding Defendants alleged FLSA liability. There was no collusion in reaching the settlement. The Parties were adequately represented by competent counsel experienced in litigating cases under the FLSA, and the settlement was reached was the result of good-faith, arms'

length negotiation between the Parties, that took two mediations and a settlement conference to resolve. Kristensen LLP has tried multiple employment cases and obtained substantial settlements against employers, including against exotic dance clubs in excess of three million dollars in 2020 alone. Kristensen LLP and Ellzey & Associates, PLLC (formerly Hughes Ellzey, LLP) have been appointed class and collective counsel many times during their decades of practice. In addition, Mr. Dieppa served as local counsel and helped Kristensen LLP and Ellzey & Associates, PLLC deftly navigate through the Court's local rules and practices given his decades of experience in handling employment matters. *See* Martinez Decl. ¶ 50.

The Parties have strenuously different opinions about the classification of the dancers as employees or independent contractors. The Parties engaged in written discovery, deposed defendant Michael J. Peter, and informal discovery, including evidence of the shifts Plaintiffs worked. That was the critical factor in the size of the potential damages. Counsel was cognizant and aware of each other's arguments and positions pertaining to employee classification. The risk for Defendants was that in a fee-bearing case, the attorneys' fees would dwarf the damages. Moreover, near the end of discovery, Plaintiffs would have moved for partial summary judgment on the following issues: (1) Plaintiffs were employees, not independent contractors, as a matter of law; (2) Defendants' affirmative good faith defense fails as a matter of law; and (3) Defendant Michael J. Peter's individual liability as Plaintiffs' employer. [1] While Plaintiffs took issue with the accuracy of Defendants' records, few had any records of their own, and thus would have had to rely on their own testimony to rebut Defendants' documents. *Id.*

---

[1]   Multiple district courts have found an employment relationship and required clubs to pay dancers a minimum wage. *See Harrell v. Diamond A Entm't, Inc.*, 992 F.Supp. 1343, 1348 (M.D. Fla. 1997); *Clincy v. Galardi South Enter., Inc.*, 808 F.Supp.2d 1326, 1346 (N.D. Ga. 2011) (summary judgment); *Stevenson v. Great American Dream, Inc.*, No. 1:12-CV-3359-TWT, 2013 WL 6880921, (N.D. Ga. Dec. 31, 2013) (same); *Berry v. Great American Dream, Inc.*, No. 1:13-CV-3297-TWT, 2014 WL 5822691 (N.D. Ga. Nov. 10, 2014) (Gentlemen's Club collaterally estopped from re-litigating issue that entertainers are independent contractors rather than employees); *Mason v. Fantasy, LLC*, No. 13-CV-02020-RM-KLM, 2015 WL 4512327, at *13 (D. Colo. July 27, 2015); *Verma v. 3001 Castor, Inc.*, No. 13-3034, 2014 WL 2957453, at *5 (E.D. Pa. June 30, 2014); *Levi v. Gulliver's Tavern, Incorporated*, No. 15-cv-216-WES, 2018 WL 10149710 (D.R.I. Apr. 23, 2018) (granting dancer plaintiff's partial summary judgment that they are employees under the FLSA).

The settlement allocations to Plaintiffs reflect the potential recovery and strength of Plaintiffs' case given the uncertainty of any recovery at trial due to the financial condition of Defendants as well as defendant Michael J. Peter's health. Had Plaintiffs continued and sought a greater recovery, there was a strong likelihood that any victory—which could not be guaranteed—would have been pyrrhic as greater time and expense would have been incurred in Plaintiffs' counsel's lodestar was over $170,000 and spent $5,647.83 in litigating the case. After full trial preparation and a trial, the loadstar would have been far greater than what Plaintiffs' counsel is receiving under this settlement. *See* Martinez Decl. ¶ 51.

The FLSA structure was intentionally designed by Congress as a remedial measure to incentivize and encourage private attorneys to pursue lower damage wage and hour claims with clear liability. "[T]he FLSA is a uniquely protective statute," *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015), cert. denied, 136 S. Ct. 824 (2016), and its purposes "require that it be applied even to those who would decline its protections," *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302 (1985). By awarding reasonable fees and costs to prevailing FLSA litigants, "Congress intended to encourage private citizen enforcement of the [FLSA]." *Soler v. G & U, Inc.*, 658 F.Supp. 1093, 1097 (S.D.N.Y. 1987). Indeed, "Plaintiffs' counsel's role as private attorneys general is key to the effective enforcement of these statutes." *Trinidad v. Pret a Manger (USA) Ltd.*, No. 12-cv-6094 (PAE), 2014 WL 4670870, at *12 (S.D.N.Y. Sept. 19, 2014).

The settlement compensates Plaintiffs for their estimated damages. It is greater than Defendants wished to pay and represents a compromise given the unusual circumstance that Defendants' club Solid Gold, has been closed for over a year and will not reopen.

This settlement is favorable to Plaintiffs, and in light of the work performed in the lawsuit and the late juncture of the settlement in the litigation, the fees and costs incurred are reasonable. *See* Martinez Decl. ¶ 52.

///

///

## VI.   CONCLUSION

For the foregoing reasons, the Plaintiffs request that the Court approve the settlement and enter the proposed Order.

Dated: July 12, 2021

/s/ Jesenia A. Martinez
Jesenia A. Martinez
California Bar No. 316969
**KRISTENSEN LLP**
12540 Beatrice Street, Suite 200
Los Angeles, California 90066
Telephone: (310) 507-7924
Fax:  (310) 507-7906
*jesenia@kristensenlaw.com*
(*Pro Hac Vice*)

Raymond R. Dieppa
Florida Bar No. 27690
**FLORIDA LEGAL, LLC**
12550 Biscayne Boulevard, Suite 405
North Miami, Florida 33181
Telephone: (305) 722-6977
*ray.dieppa@floridalegal.law*

Jarrett L. Ellzey
**ELLZEY & ASSOCIATES, PLLC**
1105 Milford Street
Houston, Texas 77066
Telephone:  (713) 554-2377
*jarett@ellzeylaw.com*
(*Pro Hac Vice* forthcoming)

***Attorneys for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on Monday, July 12, 2021, a true and correct copy of the attached **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR APPROVAL OF FLSA SETTLEMENT** and accompanying document were served via CM/ECF on all participants of record, including the participants listed below, pursuant to Rule 5 of the FED. R. CIV. P. 5:

Luke Lirot
Sean X. Colon
**LUKE CHARLES LIROT, P.A**
2240 Belleair Road, Suite 190
Clearwater, Florida 33764
Email: luke2@lirotlaw.com
Email: krista@lirotlaw.com
Email: sean@lirotlaw.com

***Attorneys for All Defendants***

*/s/ Jesenia A. Martinez*
Jesenia A. Martinez